IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JAMES HAWLEY,                         :
    Plaintiff,                    : CIVIL ACTION NO. 3:04-CV-1915
                                  :
    v.                            :
                                  :
DELAWARE AND HUDSON RAILWAY           :
COMPANY, INC., d/b/a C.P. RAILWAY     : (JUDGE CONABOY)
SYSTEM; GUILFORD RAIL SYSTEM; and     :
NORFOLK SOUTHERN RAIL SYSTEM,         :
    Defendants.                   :

**MEMORANDUM**

Pending before the Court are Defendant Guilford Rail System's ("Guilford") Motion For Summary Judgment (Doc. 30) and Defendant Norfolk Southern Railway's ("Norfolk") Motion For Summary Judgment (Doc. 33).  In light of the similar issues of fact and law, we consider both motions in turn.

On October 2, 2006, Guilford filed its Motion For Summary Judgment (Doc. 30) with its Statement of Undisputed Material Facts (Doc. 31) and Brief in Support (Doc. 32).  On November 1, 2006, James Hawley ("Plaintiff") filed his Brief in Opposition with a statement of additional facts.  (Doc. 46.)  On November 29, 2006, Defendant filed a Response To Plaintiff's Statement Of Material Facts (Doc. 50) and its Brief in Further Support of its Motion for Summary Judgment.  (Doc. 51.)  The motion is fully briefed and now ripe for disposition.

Additionally on October 2, 2006, Norfolk filed its Motion For Summary Judgment (Doc. 33) with its statement of Material Facts Not

in Dispute (Doc. 34) and Brief in Support (Doc. 35).  On November 1, 2006, Plaintiff filed his Brief in Opposition with a statement of additional facts.  (Doc. 47.)  On November 14, 2006, Norfolk filed its reply brief.  (Doc. 48.)  The motion is fully briefed and now ripe for disposition.

## I.    BACKGROUND[1]

At the time of the events relative to this action, Plaintiff, a New York resident, was employed by Defendant Delaware and Hudson Railway Company Inc., d/b/a/ C.P. Railway System ("D. & H."), as a train conductor.  D. & H. is a New York corporation.  (Doc. 12.)  Defendant Norfolk Southern Rail System ("Norfolk"), at all times relevant to this action owned the freight car bearing number NS252157.  Norfolk is a Virginia Corporation with its principle place of business in Virginia.  (Doc. 12.)  Guilford is a Delaware corporation with its principle place of business located in Massachusetts.  *Id.*

On November 6, 2003, Norfolk interchanged the freight car to D. & H. who subsequently transferred the freight car to Guilford.  On November 17, 2003, Guilford delivered the car to consignee[2] Agro

---

[1] The factual background is primarily derived from Plaintiff's Briefs in Opposition (Doc. 46, 47) unless otherwise cited.

[2] A consignee in commercial terms means one to whom a consignment is made, one to whom goods are shipped for sale, or one to whom a carrier may lawfully make delivery in accordance with a contract.  *Black's Law Dictionary* 307 (6th

Care Limited ("consignee") in Bernardston, Massachusetts.  After receiving the freight car, consignee reported to Guilford that the car's lading was defective and several hundred pounds of the consignee's freight had become wet.

On November 24, 2003, freight claims agent Matt Raylinsky inspected the freight car.  Raylinsky discovered the freight car's hatch cover gaskets were torn and deteriorated.  Arrangements were made to return the freight car to Norfolk for repairs.  The freight car was transported from the consignee's property in Bernardston, Massachusetts, and arrived at Guilford's Mohawk train yard in Mechanicsville, New York, on December 1, 2003.  (Doc. 32 at 2.)

According to Guilford's car maintenance manager, James Olson, car inspections were not being done at that time at the Mohawk yard.  Olson stated that transportation individuals may have conducted inspections, but car department people did not.  Also Guilford's head of the transportation department, Richard Miller, was unable to definitively indicate that inspections were conducted.

On December 1, 2003, the freight car was interchanged to D. & H. for its return to Norfolk's facility in Enola, Pennsylvania. (Doc. 32 at 2.)  Plaintiff was working as a conductor for D. & H. on the train which then included the freight car at issue.  At approximately 5:00 P.M., the train departed the Mohawk yard in

ed. 1990).

Mechanicsville, New York, and traveled toward Binghamton, New York.

At or near mile post 584.3, six (6) hours after departing, the train set off a detector indicating the train may have been dragging something.  Plaintiff investigated the cause of the warning and walked along the west side of the train.  Then Plaintiff attempted to cross to the other side of the train.  Plaintiff climbed up the ladder of the west side of the freight car.  He stepped onto the sill of the ladder at the end of the car.  Plaintiff placed both feet onto the sill and began to move to the crosswalk with his left foot.  As Plaintiff stepped onto the crosswalk, his foot slid off the ladder and Plaintiff fell to the ground.  Plaintiff sustained injuries to his right shoulder and back.

After the accident, D. & H. inspector David Fancher found more than a dozen defects on the freight car.  The defects included: the crossover board on both ends of the car were not secured due to six (6) loose bolts on each making it possible that the board could shift and someone could slide off it; the bolt on the hand break was loose; the hose support that prevents a hose from dragging on the rails was missing on both ends of the car; an automatic identification tag and bracket was missing; the coupler on one end of the car required the addition of a shim; an air leak required tightening; the running board extension brackets required to support the running board that provides employees to safely pass

4

from car to car were broken; and, the ladder that Plaintiff slipped off was bent on both ends of the car and required welding to repair.

Plaintiff asserts a claim against his employer D. & H. pursuant to the Federal Employee's Liability Act ("FELA"), 45 U.S.C. § 51, *et seq.*,[3] and the Federal Safety Appliance Act ("FSAA"), 49 U.S.C. § 20301, *et seq.*[4]  (Doc. 12.)  Plaintiff also asserts negligence actions against Guilford and Norfolk.  *Id*.

Guilford alleges it did not owe Plaintiff a duty under either federal or state law.  (Doc. 32.)  Additionally, Guilford contends Plaintiff cannot prove any act of Guilford's was the proximate cause of Plaintiff's injuries.  *Id*.  According to Guilford, the FELA preempts any common law negligence claim Plaintiff may have against Guilford.  *Id*.

Norfolk contends it did not owe a duty to Plaintiff which would give rise to a negligence claim.  (Doc. 35.)  Further, Norfolk asserts it did not have any notice of any defect in car NS252157 prior to Plaintiff being injured and, therefore, it is not

---

[3] The FELA provides a railroad carrier employee a federal statutory means of recovery from his or her employer for injuries sustained in the course of employment.  *See* 49 U.S.C. § 51, *et seq*.

[4] The FSAA provides the statutory requirements for safety appliances on all railroad cars.  *See* 49 U.S.C. § 20301, *et seq*.

liable under Restatement (Second) of Torts § 388.[5]

## II.  DISCUSSION

After discussing the appropriate standard for summary judgment, we will address Guilford's Motion For Summary Judgment (Doc. 30) and then proceed to Norfolk's Motion For Summary Judgment (Doc. 33).

### A.   SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Knabe v. Boury*, 114 F.3d 407, 410 n.4 (3d Cir. 1997)(citing Fed. R. Civ. P. 56(c)).  "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

---

[5] Section 388 of the Restatement (Second) of Torts is titled "Chattel Known To Be Dangerous For Intended Use" and applies generally when a supplier of chattel knows or should know a chattel supplied has a condition which may injure someone using it.

A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under the law applicable to the case. *Anderson*, 477 U.S. at 248; *Levendos v. Stern Entertainment Inc.*, 860 F.2d 1227, 1233 (3d Cir. 1988). An issue of material fact is "genuine" if the evidence is such that a reasonable jury might return a verdict for the non-moving party. *Anderson*, 477 U.S. at 257. In determining whether a genuine issue of fact exists, a court must resolve all factual doubts and draw all reasonable inferences in favor of the nonmoving party. *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 140 (3d Cir. 2004) (citation omitted).

The initial burden is on the moving party to show an absence of a genuine issue of material fact. The moving party may meet this burden by "pointing out to the district court [] that there is an absence of evidence to support the nonmoving party's case when the nonmoving party bears the ultimate burden of proof." *Celotex*, 477 U.S. at 325. The non-moving party may not rest on the bare allegations contained in his or her pleadings, but is required by Federal Rule of Civil Procedure 56(e) to go beyond the pleadings by way of affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). When Rule 56(e) shifts the burden of proof to the non-moving party, that party must produce evidence to show the

existence of every element essential to its case which it bears the burden of proving at trial. *Equimark Commercial Finance Co. v. C.I.T. Financial Services Corp.*, 812 F.2d 141, 144 (3d Cir. 1987).

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of evidence." *Anderson*, 477 U.S. at 255. Therefore, when evidentiary facts are in dispute, when the credibility of witnesses may be in issue, or when conflicting evidence must be weighed, a full trial is usually necessary.

### B.    GUILFORD'S MOTION FOR SUMMARY JUDGMENT

Guilford argues Plaintiff has not established the elements necessary to prevail on a claim for negligence. (Doc. 32.)  Also, Guilford asserts any state law negligence claim Plaintiff may have against it is preempted by the FELA. *Id.*  For the reasons that follow, Guilford's Motion For Summary Judgment (Doc. 30) is denied.

### 1.    PLAINTIFF'S NEGLIGENCE CLAIM

Regarding the argument that Plaintiff cannot prevail on the elements of negligence, Guilford argues it had no duty under applicable federal or state law. (Doc. 32.)  Further, Guilford asserts Plaintiff cannot establish Guilford's actions were the proximate cause of any injury sustained. *Id*.

In railroad negligence cases, the United States Supreme Court

8

concluded a nonemployee may not recover pursuant to the FELA or FSAA and must seek recovery pursuant to a state common law tort action. *Crane v. Cedar Rapids & Iowa City Ry. Co.*, 395 U.S. 164, 166 (1969). All parties appear to agree that Pennsylvania substantive law applies and the parties briefed this motion accordingly.

In a negligence action under Pennsylvania law, the plaintiff bears the burden of establishing the defendant owed a duty of care to the plaintiff, the defendant breached the duty, the breach proximately caused plaintiff's injury, and the plaintiff suffered an actual injury. *R.W. v. Manzek*, 888 A.2d 740, 746 (Pa. 2005). The determination of whether a duty exists is a question of law for the court to decide. *Id*. A duty can arise from the common law, statutes, and by contract. *Emerson v. Adult Cmty. Total Services*, 842 F. Supp. 152, 155 (E.D. Pa. 1994)(*citing Walker v. Pennsylvania Co. For Insurance on Lives and Granting Annuities*, 106 A. 795, 796 (Pa. 1919)). In a negligence per se action, the violation of an applicable statute, ordinance, or regulation designed to prevent public harm can establish the elements of duty and breach. *Lux v. Gerald E Ort Trucking, Inc.*, 887 A.2d 1281, 1288 (Pa. Super. 2005).

Although Plaintiff may not recover directly from Guilford under the FELA or FRSA, federal statutes or regulations may provide a duty pursuant to a state negligence action. In this case, federal statutes which may give rise to a duty include regulations

9

enacted pursuant to the Federal Railroad Safety Act ("FRSA").   49 U.S.C. § 20101, *et seq.*   The FRSA authorizes the Secretary of Transportation to "prescribe regulations and issue orders for every area of railroad safety."   49 U.S.C. § 20103(a).   The Parties in this action cite to § 215 of the Railroad Freight Car and Safety Standards which sets forth the minimum federal safety standards applicable to freight cars.   The regulation provides, in relevant part:

> (a) At each location where a freight car is placed in a train, the freight car shall be inspected before the train departs.   This inspection may be made before or after the car is placed in the train.
>
> . . .
>
> (c) At a location where a person designated under § 215.11 is not on duty for the purpose of inspecting freight cars, the inspection required by paragraph (a) shall, as a minimum, be made for those conditions set forth in Appendix D to this part.

49 C.F.R. § 215.13.   Appendix D to § 215 lists the hazardous conditions readily discoverable by a train crew during a customary inspection.   The list includes:

> 1. Car Body:
>
> . . .
>
>     (g) Broken or missing safety appliance.
>
> . . .
>
> 6. Any other apparent safety hazard likely to cause an accident or casualty before the train arrives at its destination.

10

49 C.F.R. Pt. 215, App. D.  The Railroad Freight Car Safety

Standards lists sill steps and ladders as safety appliances with

the requisite specifications for such appliances.  *See* 49 C.F.R. §

231.2(c),(d).

The parties do not assert any Pennsylvania statute applies to

the instant matter.  Thus, we look to Pennsylvania case law and

relevant authority from our circuit to look for a source of a duty

in the instant matter.

In *Dominices v. Monongahela Connecting R. Co.*, 195 A. 747, 750

n.2 (Pa. 1938), the Pennsylvania Supreme Court recognized the split

in authority from other jurisdictions as to whether a subsequent

duty of inspection would relieve a delivering railroad of

liability.  The court specifically stated:

> Where a carrier neglects its duty of
> inspection and turns a defective car over to
> a connecting railroad, which, ignorant of the
> defect, likewise fails to inspect the car
> before delivery to the consignee, there is a
> difference of opinion as to whether the
> failure of inspection by the second railroad
> is merely concurrent negligence which does
> not exculpate the first carrier (*Pennsylvania
> R. R. Co. v. Snyder*, 45 N.E. 559 [(Ohio
> 1896);] *Moon v. Northern Pacific R. R. Co.*,
> 48 N.W. 679 [(Minn. 1891);] *Teal v. American
> Mining Co.*, 87 N.W. 837 [(Minn. 1901)]), or
> whether it becomes the proximate cause of the
> injury and relieves the first railroad from
> liability (*Glynn v. Central R. R. Co. of New
> Jersey*, 56 N.E. 698 [(Mass. 1900);] *Missouri,
> K. & T. Ry. Co. v. Merrill*, 70 P. 358 [(Kan.
> 1902);] *Roberts v. Southern Pacific Co.*, 201
> P. 958 [(Cal. Dist. Ct. App. 1921);] *Lellis
> v. Michigan Central R. R. Co.*, 82 N.W. 828

11

[(Mich. 1900)]]).

*Dominices*, 195 A. 747, 750 n.2.  The court noted under Pennsylvania law a railroad must subject its freight cars to an inspection sufficient to ascertain any fairly obvious defect in the cars' construction or repair which constitutes a likely source of danger prior to hauling the cars over its lines.  *Dominices*, 195 A. at 748.  The *Dominices* court observed the basis for liability stems from the carrier's implied assurance as a supplier that the freight car either owned or temporarily procured from a connecting carrier was made safe by a reasonable inspection to enter and remove merchandise.  *Id*. at 749.  The court further observed a consignee was generally entitled to rely on this implied assurance from a carrier.  *Id*.

However, in *Dominices* the court stated the usual duties owed by one who supplies chattel were not applicable because the consignee supplied the defective car to the connecting railroad for transport to another part of the consignee's plant.  *Id*.  The *Dominices* court further explained the consignee in that case did not have a right to rely on any inspection because the consignee was the source of the defective car.  *Id*.  The court stated, "[i]t would be a strained legalism to import an implied representation by defendant [connecting railroad] to consignee that the car was in good condition, when the consignee had itself put the car in bad condition."  *Id*.

12

In *Court v. Pittsburgh and Lake Erie Railroad Co.*, 190 A.2d 139, 141 (Pa. 1963), the Pennsylvania Supreme Court reaffirmed a connecting railroad supplying a freight car to a consignee was under a duty as a supplier of chattel pursuant to Restatement (First) of Torts § 392 to diligently ascertain whether the car was in suitable condition for the work intended. The court observed a railroad was under a duty pursuant to the "rules of safety" to conduct an inspection and if such inspection was not performed adequately or properly then the railroad was responsible for any resulting damage. *Court*, 190 A. at 143-44.

In *Court*, the connecting railroad's negligence depended in part on whether the defective condition existed prior to the railroad accepting possession of the car for transportation to the consignee. *Id*. at 142. The court stated defendants P. & L.E., the railroad who supplied the frieght car, and connecting railroad B. & O.'s liability was not "uncoupled [from] the train of responsibility by which they were continuously attached to the itinerant, [defective freight car]." *Id*. at 143. The court also noted the trial court properly concluded the jury by its verdict found all three defendants concurrently negligent. *Court*, 190 A.2d at 143-44.

In *Patton v. Baltimore & O.R. Co.*, 197 F.2d 732, 741 (3d Cir. 1952), the United States Court of Appeals for the Third Circuit, pursuant to *Dominices* and Restatement (First) of Torts § 392,

13

observed a connecting railroad owed an employee of a receiving railroad a duty to deliver its cars in a reasonably safe condition after performance of a proper inspection.  The Third Circuit in *Patton* also noted the jury was entitled to conclude from the evidence presented that, pursuant to its duty, the connecting railroad's failure to properly inspect the freight cars was the proximate cause of the accident.  *Patton*, 197 F.2d at 742.

We recognize the Pennsylvania Supreme Court in *Court* and the United States Court of Appeals for the Third Circuit in *Patton* discussed a railroad's duty pursuant to the Restatement (First) of Torts § 392 to deliver its freight cars after conducting a proper inspection.  *See Court*, 190 A. at 141; *see also Patton*, 197 F.2d at 741.  As we are applying Pennsylvania general principles of negligence law, we look to current Pennsylvania case law for the viability of Restatement (First) of Torts § 392.

Our research reveals no Pennsylvania Supreme Court case on point.  Thus, we turn to the Pennsylvania intermediate appellate courts for guidance.  We find the Pennsylvania Superior Court has observed § 392 of the Restatement (Second) of Torts is the applicable law in Pennsylvania regarding the negligent supply of a chattel.[6]  *Drum v. Shaull Equipment and Supply Co.*, 787 A.2d 1050,

---

[6] The Reporter's Notes to § 392 of the Restatement (Second) of Torts provides this section differs from the Restatement (First) by changing the wording to "endangered by its probable use" from "in the vicinity of its probable use," and by rewording Clause (b) without substantive change.

1063 (Pa. Super. 2001).

We turn now to the language of Restatement (Second) of Torts § 392.  Section 392 of the Restatement (Second) of Torts provides

> Division 2. Negligence
>
> Chapter 14. Liability Of Persons Supplying Chattels For The Use Of Others
>
> Topic 2. Persons Supplying Chattels To Be Used For Their Business Purposes
>
> § 392. Chattel Dangerous For Intended Use
>
> One who supplies to another, directly or through a third person, a chattel to be used for the supplier's business purposes is subject to liability to those for whose use the chattel is supplied, or to those whom he should expect to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by person for whose use the chattel is supplied
> (a) if the supplier fails to exercise reasonable care to make the chattel safe for the use for which it is supplied, or
> (b) if he fails to exercise reasonable care to discover its dangerous condition or character, and to inform those whom he should expect to use it.

Restatement (Second) of Torts § 392.

As previously discussed above, the Pennsylvania Supreme Court in *Dominices* recognized a split in authority in other jurisdictions as to whether a connecting carrier who performs a negligent inspection and delivers a defective freight car is concurrently liable or relieved of liability when a subsequent railroad also fails to properly inspect the car.  *Dominices*, 195 A. at 750 n.2

(citations omitted).  Finding no Pennsylvania railroad negligence case directly on point, we turn to other Pennsylvania Supreme Court precedent upholding liability pursuant to general principles of negligence where a chattel is supplied to one with a subsequent duty of inspection.

In *Lambert v. Pittsburgh Bridge and Iron Works*, 344 A.2d 810, 812 (Pa. 1975), the Pennsylvania Supreme Court found a plaintiff suing the supplier of a chattel that injured him is not barred from recovery even though the plaintiff's employer failed to exercise the duty of reasonable inspection.  The court based its finding on previous Pennsylvania Supreme Court case law applying the general principle; various sections of the Restatement (Second) of Torts; Prosser, The Law of Torts § 73 (3d ed. 1964); and, case law from other courts.  *Id.*

The court specifically considered the distinction between a duty of inspection pursuant to § 392 as compared to § 388 of the Restatement (Second) of Torts.  *Id*. at 811.  The court stated:

> The duty of reasonable inspection of the chattel is entirely different depending upon whether Section 388 or 392 is applicable. Under Section 392, the duty is clearly upon the supplier of the chattel and the user will be barred from recovery only if, knowing the dangerous condition, he fails to take adequate precautions to protect himself. Under Section 388, the supplier of the chattel is liable only if he 'knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied' and fails to so warn the user.  The user of chattel has, under Section

> 388, a duty of reasonable inspection and the supplier of the chattel will never be held liable for a condition which is readily discoverable upon casual inspection unless the condition is one which only persons of special experience would realize to be dangerous.

*Lambert*, 344 at 811 n.3.  The court characterized the factual situation in *Lambert* as a bailment for repair and affirmed § 388 was the applicable law in such a case.  *Id*. at 811.

We note § 388 of the Restatement (Second) of Torts provides:

> Division 2. Negligence
>
> Chapter 14. Liability Of Persons Supplying Chattels For The Use Of Others
>
> Topic 1. Rules Applicable To All Suppliers
>
> § 388. Chattels Known To Be Dangerous For Intended Use
>
> One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier
> (a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
> (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and
> (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

Restatement (Second) of Torts § 388.

The Pennsylvania Superior Court in *Lambert v. Pittsburgh Bridge and Iron Works*, 323 A.2d 107, 111-12 (Pa. Super. 1974), *rev'd on other grounds*, 344 A.2d 810 (Pa. 1975), discussed the necessity to characterize the activity for which the chattel was supplied.  The court observed such characterization was necessary to determine whether Section 392 or 388 applied to the facts presented in the case.  *Lambert*, 323 A.2d at 111-12.  We recognize an inquiry such as that undertaken by the Pennsylvania Superior Court turns on the specific facts particular to each case.  *See id.*

Given this legal framework, first we address whether Guilford owed a duty under federal law.  As previously discussed above, both parties cite the FRSA and Railroad Freight Car Safety Standards in their arguments in relation to the element of duty.  (Docs. 32 and 46.)  Although the parties do not expressly argue the issue, we recognize under Pennsylvania negligence law whether a statute may serve as the basis of liability is analyzed pursuant to the principles of negligence per se.  *See Cogini by Cogini v. Portersville Valve Co.*, 470 A.2d 515, 517-18 (Pa. 1983).  The Pennsylvania Supreme Court in *Cogini* discussed the appropriate analysis for a court to apply in determining whether a particular legislative enactment will provide a duty under Pennsylvania law. *Id*.  The Pennsylvania Supreme Court held the appropriate analysis is pursuant to the Restatement (Second) of Torts § 286 titled "When Standard of Conduct Defined by Legislation or Regulation Will Be

18

Adopted[.]" *Cogini*, 470 A.2d at 517-18.

Here, the parties do not provide any analysis pursuant to § 286 or other relevant Pennsylvania authority.  Neither party briefs nor provides any analysis as to whether under Pennsylvania law the FRSA or Railroad Freight Car Safety Standards would be adopted. Given the lack of argument by the parties, we are unable to determine if the federal legislation cited above would provide the requisite standard of conduct for Guilford.  Thus, our analysis proceeds to the parties' arguments with respect to Pennsylvania state law.

As previously discussed above, Pennsylvania law imposes a duty on a railroad before hauling a freight car over its lines to conduct a sufficiently thorough inspection to detect fairly obvious defects in its state of repair or construction which may pose a likely source of danger.  *See Court*, 190 A.2d at 142; *see also Dominices*, 195 A. at 748; *Patton*, 197 F.2d at 741.  Further, the Pennsylvania Supreme Court in *Court* and the Untied States Court of Appeals for the Third Circuit in *Patton* cited § 392 of the Restatement (First) of Torts as authority for a railroad's duty with regard to delivering a freight car.  *See Court*, 190 A. at 141; *see also Patton*, 197 F.2d at 741.  In accord with the Pennsylvania Superior Court in *Drum*, we recognize the substantive continued viability of § 392 as provided in the Restatement (Second) of Torts.  *See Drum*, 787 A.2d at 1063.

19

Although Guilford makes much of the distinction between a
consignee and a connecting railroad, we do not regard the
distinction as determinative of the issue of duty.  The
Pennsylvania Supreme Court in *Dominices* recognized the split in
authority from other jurisdictions as to whether a subsequent duty
of inspection would relieve a delivering railroad of liability.
*See Dominices*, 195 A. at 750.  We recognize some cases present the
factual situation where the injured plaintiff was an employee of a
consignee and here Plaintiff is an employee of a connecting
railroad.  *See generally Dominices*, 195 A. 747; *see also Court*, 190
A.2d 139.

However, *Patton* presented the situation where, as here, a
railroad delivered a railroad car to another railroad.  *See Patton*,
197 F.2d at 740-41.  In *Patton*, the railroad not in possession of
the car at the time of the accident was not relieved of liability
solely because of the receiving railroad's concurrent negligence.
*Patton*, 197 F.2d at 742-43.  Additionally, in *Court* the court
observed the trial court properly concluded the jury found a
plaintiff employee of a consignee could recover for the concurrent
negligence of his employer, the connecting railroad, and the
railroad that supplied the defective freight car.  *Court*, 190 A.2d
at 143-44.  Moreover, in *Lambert* the court confirmed an employer's
subsequent duty of reasonable inspection of a chattel is not a bar
to recovery by an injured employee for the negligence of the

20

supplier of a chattel.  *Lambert*, 344 A.2d at 812.

Here, it is undisputed Guilford received the car on November 6, 2003.  Guilford delivered the car to the consignee on November 17, 2003.  Defects in the condition of freight car NS252157 were discovered at the consignee's place of business.  Guilford was then instructed by Norfolk to transport freight car NS252157 and interchange it with D. & H. to deliver the car to Norfolk's yard in Enola, Pennsylvania, for repairs.  On December 1, 2003, Guilford interchanged the car with D. & H.  Six hours later Plaintiff allegedly sustained injuries from falling off a ladder on car NS252157.  Less than one (1) month after the accident, thirteen (13) defects were discovered on car NS252157 including the crossover board on both ends was not secure due to six (6) loose bolts and the ladder Plaintiff allegedly fell from was bent at both ends requiring welding to repair.

Based on the case law reviewed above, we cannot say at this stage in the proceedings that as a matter of law Guilford did not owe Plaintiff a duty nor is it relieved of liability solely because of any subsequent duty of D. & H.

Regarding Guilford's argument that Plaintiff cannot establish any of its actions were the proximate cause of his injuries (Doc. 32), we recognize the Pennsylvania Superior Court has defined proximate cause as:

> [A] wrongful act which was a substantial
> factor in bringing about the plaintiff's

> harm.  Proximate cause does not exist where
> the causal chain of events resulting in
> plaintiff's injury is so remote as to appear
> highly extraordinary that the conduct could
> have brought about the harm.

*Lux*, 887 A.2d at 1286-87 (citations omitted).

As discussed above, there are several theories of liability pursuant to common law which may impose a duty on Guilford.  We are further guided by the Pennsylvania Supreme Court's observation in *Court* of concurrent liability imposed upon a supplying and connecting railroad where the court stated, "[t]he P. & L.E. and the B. & O. at no time uncoupled the train of responsibility by which they were continuously attached to the itinerant, [defective car]."  *Court*, 190 A.2d at 143.  Additionally, in *Patton* the court noted "[f]rom the evidence before it the jury was entitled to conclude that the cars had not been properly inspected and that the failure of B[.] & O[.] to perform this duty was a proximate cause of the accident."  *Patton*, 197 F.2d at 742.

Given the time line of events in this case and the potential sources of a duty of reasonable inspection discussed above which may apply to Guilford, we cannot say as a matter of law at this stage in the proceedings that any actions or omissions of Guilford were not a proximate cause of Plaintiff's injuries.

**2.    PREEMPTION OF STATE NEGLIGENCE CLAIMS BY FELA**

We now turn to Guilford's argument that the FELA preempts any

22

state law negligence claim Plaintiff may assert.  (Doc. 32.)  As discussed above in regard to duty, the United States Supreme Court in *Crane* observed the FELA applies only to a railroad employee's claims against their employer and nonemployee plaintiffs must seek recovery pursuant to state common law negligence actions.  *Crane*, 395 U.S. at 166.

Here, Plaintiff is not the employee of Guilford and, thus, Plaintiff may not recover for any injury from Guilford under the FELA.  *See Crane*, 395 U.S. at 166.  In accord with *Crane*, Plaintiff has brought the instant action against Guilford pursuant to Pennsylvania state common law negligence.  *See id*.  Based on the above case law, we find Guilford is not entitled to summary judgment on this issue.

### 3.   CONCLUSION AS TO GUILFORD'S MOTION

In consideration of the above analysis, the standard for summary judgement, and existence of genuine issues of material fact, Guilford's Motion For Summary Judgment (Doc. 30) is denied.

### C.   NORFOLK'S MOTION FOR SUMMARY JUDGMENT

Norfolk's argument for summary judgment is based on its assertion that it did not owe Plaintiff a duty to inspect freight car NS252157.  (Doc. 35.)  Norfolk further alleges it did not have notice of any defect in the car.  (Doc. 35.)

23

For reasons similar to those discussed concerning Guilford's motion, we conclude Norfolk's Motion for Summary Judgment (Doc. 33) must be denied.  As set out above, relevant authority suggests several bases upon which common law negligence of a railroad not in possession of the freight car at the time of the injury may be found.  Recognizing Norfolk's actual possession of freight car NS252157 here may be more removed in time than that of Guilford, the distinction is not dispositive.  Norfolk has not met its burden at this stage of the proceedings because it has not shown that it could not be liable under *any* theory discussed above.  Further, because these cases are very fact specific and there are many genuine issues of material fact here, summary judgment is not appropriate.

Norfolk's argument that there is no evidence it knew or should have known of any defect in car NS252157 under § 388 of the Restatement (Second) of Torts (Doc. 35) does not persuade us otherwise.  We recognize the determination of Norfolk's actual or constructive knowledge as to any dangerous condition of freight car NS252157 is a highly fact dependent inquiry.  Norfolk has not demonstrated the lack of a genuine issue of material fact on this issue.  Moreover, the relevant authority discussed above suggests other theories of liability which Norfolk does not address.

**IV.   CONCLUSION**

    For the reasons discussed above, Defendant Guilford Rail System's Motion For Summary Judgment (Doc. 30) and Defendant Norfolk Southern Railway's Motion For Summary Judgment (Doc. 33) are DENIED.


                                      S/Richard P. Conaboy
                                      RICHARD P. CONABOY
Dated: March 26, 2007                 United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JAMES HAWLEY,                          :
    Plaintiff,                     : CIVIL ACTION NO. 3:04-CV-1915
                                       :
    v.                             :
                                       :
DELAWARE AND HUDSON RAILWAY            :
COMPANY, INC., d/b/a C.P. RAILWAY  : (JUDGE CONABOY)
SYSTEM; GUILFORD RAIL SYSTEM; and  :
NORFOLK SOUTHERN RAIL SYSTEM,          :
    Defendants.                    :

**ORDER**

AND NOW, this 26th day of March 2007, for the reasons discussed in the accompanying Memorandum, the following is entered:

1.    Defendant Guilford Rail System's Motion For Summary Judgment (Doc. 30) is DENIED; and

2.    Defendant Norfolk Southern Railway's Motion For Summary Judgment (Doc. 33) is DENIED.


S/Richard P. Conaboy
RICHARD P. CONABOY
United States District Judge